IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–01022–KMT

DAVID ADKINS,

   Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality, and
GERALD BELLOW, in his personal capacity,

   Defendant.

---

## ORDER

---

   Before the court is Defendants' "Motion to Dismiss Pursuant to Rule 12(b)(6).

(["Motion"], Doc. No. 11.)  Plaintiff has responded in opposition to the Motion, and Defendants

have replied.  (["Response"], Doc. No. 19; ["Reply"], Doc. No. 20.)

### STATEMENT OF THE CASE

   Plaintiff David Adkins ["Mr. Adkins"] brings this lawsuit, pursuant to 42 U.S.C. § 1983,

asserting violations of his constitutional rights by the City of Colorado Springs ["Colorado

Springs," or "the City"], and a Colorado Springs Police Department ["CSPD"] employee, Gerald

Bellow ["Officer Bellow"].  (["Complaint"], Doc. No. 1 at ¶¶ 1-4.)  According to the Complaint,

on April 13, 2018, in the early morning hours, Plaintiff fled the scene of a motor vehicle

accident, on foot, and "attempted to conceal himself" in an "unlocked pick-up [sic] truck" at the

nearby Colorado Springs Airport.[1]  (*Id.* at ¶¶ 1, 11-12.)  Around that time, CSPD was reportedly "notified regarding David Adkins being wanted on suspicion of attempted robbery."  (*Id.* at ¶ 11.)  Shortly thereafter, "[n]umerous" CSPD officers, including Officer Bellow, "arrived on the scene."  (*Id.* at ¶ 12.)  Officer Bellow was reportedly "told by witnesses at the scene that Mr. Adkins was hiding in the pick-up truck."  (*Id.* at ¶ 13.)  According to the Complaint, Officer Bellow, "a thirty-year veteran" of CSPD, then "calmly approached the pickup and opened fire on the [vehicle] containing Mr. Adkins" with "specific intent" to "kill or maim" him.  (*Id.* at ¶¶ 15-16.)  Officer Bellow is said to have "fired five shots into the vehicle."  (*Id.* at ¶ 1.)  It is alleged that Officer Bellow "did not identify himself as law enforcement or give any command for Mr. Adkins to surrender," before discharging his weapon.  (*Id.* at ¶ 14.)

After Officer Bellow "opened fire," Plaintiff, reportedly "[f]earing for his life," then "fled from the vehicle and was apprehended moments later by law enforcement."  (*Id.* at ¶ 17.)  Although Mr. Adkins ultimately "escaped unharmed" from the incident, he is said to have subsequently suffered a "severe post-traumatic stress injury which caused him to slide further into methamphetamine addiction, ultimately leading to a twenty-four (24) year sentence in the Department of Corrections."  (*Id.* at ¶¶ 16, 21.)

According to the Complaint, on around July 19, 2018, Officer Bellow was indicted on a felony charge for attempted assault, arising from the April 13, 2018 use-of-force incident.  (*Id.* at ¶ 2, 19.)  Shortly after his indictment, Officer Bellow was reportedly "suspended from CSPD."

---

[1] The pickup truck was said to be located "adjacent" to the scene of the motor vehicle accident, in the Colorado Springs Airport's "maintenance yard."  (Compl. ¶ 11.)  It is unclear from the Complaint whether the pickup truck was operable, and if so, whether the keys were inside of the vehicle.

(*Id.* at ¶ 19.)  Plaintiff complains that, up until that time, Officer Bellow "was never disciplined nor reprimanded" by CSPD "for utilizing excessive force" against him.  (*Id.*)  On February 15, 2019, Officer Bellow reportedly pled guilty to recklessly creating a substantial and unjustified risk of Mr. Adkin's death.  (*Id.* at ¶ 20.)

Following these events, on April 10, 2020, Mr. Adkins commenced this lawsuit, pursuant to 42 U.S.C. § 1983, asserting the following causes of action: (1) "Fourteenth Amendment Violation – Excessive Force/Substantive Due Process" against Officer Bellow, in his individual capacity only; and (2) "Constitutional Failure Train and/or Supervise" against Colorado Springs. (*Id.* at ¶¶ 28-52.)  In his Complaint, Mr. Adkins seeks unspecified declaratory and injunctive relief, as well as monetary damages.  (*Id.* at 10.)

On June 15, 2020, Defendants responded to Plaintiff's allegations by filing a motion to dismiss the Complaint, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. 1.)  Specifically, Officer Bellow argues that Mr. Adkins has failed to plausibly allege any violation of his constitutional rights, or to show that any such right was "clearly established." (*Id.* at 2-6.)  Officer Bellow argues that he is, therefore, entitled to qualified immunity with respect to all claims asserted against him.  (*Id.* at 3-6.)  Colorado Springs, for its part, argues that Plaintiff's municipal liability allegations are too "general and conclusory" to support any claim for relief.  (*Id.* at 2, 6-8.)

## STANDARD OF REVIEW

### I.  *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Publicly filed court records, including court transcripts, are subject to judicial notice.  *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

## II.  Qualified Immunity

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a

constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). The court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."  *Brown*, 662 F.3d at 1164 (quoting *Pearson*, 555

U.S. at 236) (alterations omitted).

## ANALYSIS

### I.  *Officer Bellow*

The Complaint alleges that Officer Bellow used "excessive force" against Mr. Adkins,

when he "calmly approached the pickup" in which Mr. Adkins was hiding, and then "opened fire

on the [vehicle]," without first "identify[ing] himself as law enforcement or giv[ing] any

commands for Mr. Adkins to surrender."  (Compl. ¶¶ 14-15, 19.)  Officer Bellow moves to

dismiss this claim, on the basis that he is entitled to qualified immunity.  (Mot. 3-9.)

#### A.  *Whether Officer Bellow Violated Mr. Adkin's Constitutional Rights*

Because Officer Bellow has invoked qualified immunity, the court considers, first,

whether Mr. Adkins has alleged adequate facts from which to infer that Officer Bellow violated

his constitutional rights.  *Brown*, 662 F.3d at 1164.  In evaluating whether Plaintiff has plausibly

alleged a claim for excessive force, the court "must first 'isolate the precise constitutional

violation with which [Officer Bellow] is charged' because 'the choice of amendment matters.'"

*Estate of Booker v. Gomez*, 745 F.3d 405, 418-19 (10th Cir. 2014) (quoting *Porro v. Barnes*, 624

F.3d 1322, 1325 (10th Cir. 2010)) (alteration omitted).

"Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth

Amendment, depending on where the plaintiff finds himself in the criminal justice system at the

time of the challenged use of force."  *Bond v. City of Tahlequah, Okla.*, 981 F.3d 808, 815 (10th

Cir. 2020) (quoting *McCowan v. Morales*, 945 F.3d 1276, 1282-83 (10th Cir. 2019)); *accord*

*Estate of Booker*, 745 F.3d at 418-19 (explaining that each constitutional amendment "carries

with it a very different legal test" for analyzing excessive force claims). "Any force used 'leading up to and including arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures." *Estate of Booker*, 745 F.3d at 419 (quoting *Porro*, 624 F.3d at 1325-26). The Eighth Amendment, by contrast, applies to "prisoners already convicted of a crime who claim that their punishments involve excessive force[.]" *Id.* (quoting *Porro*, 624 F.3d at 1325-26). And, where neither the Fourth nor Eighth Amendment applies, courts "turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Id.* (quoting *Porro*, 624 F.3d at 1326).

### 1. *Fourth Amendment*

In this case, the alleged excessive force is alleged to have occurred prior to Mr. Adkins' arrest, which potentially implicates the Fourth Amendment. *See Bond*, 981 F. 3d at 815 ("Where, as here, the alleged excessive force occurred prior to arrest, it is the Fourth Amendment that applies."). However, "[t]he Fourth Amendment, by its plain terms, prohibits only 'unreasonable seizures.'" *Estate of Booker*, 745 F.3d at 420 (quoting U.S. Const. amend. IV.). "[W]ithout a seizure, there can be no [Fourth Amendment] claim for excessive use of force." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (citation omitted). "A person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained." *Brooks v. Gaenzle*, 614 F.3d 1213, 1220 (10th Cir. 2010) (quoting *United States v. Mendenhall*, 446 U.S. 544, 533 (1980)) (alterations omitted). In other words, the allegations must show either termination of movement by physical force" or "submission to a show of authority." *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (recognizing that a fleeing

defendant is not seized, if he does not yield to a show of authority). "[W]here a suspect fails to submit to a police officer's show of authority and instead flees from the officer, no seizure has occurred even if the officer uses deadly force against that suspect." *Sanchez v. City of Littleton*, ---- F. Supp. 3d ----, 2020 WL 5815913, at *5 (D. Colo. 2020) (quoting *Farrell*, 878 F.3d at 937-39).

Here, Officer Bellow exercised a show of authority when he allegedly "opened fire on the pick-up [sic] truck containing Mr. Adkins." (Compl. ¶ 15.) However, according to the Complaint, Mr. Adkins did not submit to Officer Bellow's show of authority, and his movement was not terminated. Rather, after Officer Bellow discharged his weapon, Mr. Adkins apparently "fled from the vehicle and was apprehended moments later by law enforcement." (*Id.* at ¶ 17.) Officer Bellow's show of authority, therefore, amounted to only an "attempted seizure," which does not implicate the Fourth Amendment. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment."); *see Farrell*, 878 F.3d at 937 (finding no seizure, where a police officer fired his gun at fleeing suspects' vehicle, "because, in fleeing, they were not submitting to the officers"); *Brooks*, 614 F.3d at 1224 (finding no seizure, where a police officer intentionally shot a suspect, because the gunshot "did not terminate [the suspect's] movement or otherwise cause the government to have physical control over him," as "evidenced by the fact that he continued climbing the fence and eluding arrest for three days"). Officer Bellow's pre-seizure conduct is, instead, subject to Fourteenth Amendment scrutiny. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) ("Substantive due process analysis is appropriate in cases that involve excessive force where a specific constitutional provision—such as the Fourth or Eighth Amendment—does not

apply."); *see Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (evaluating an officer's pre-seizure conduct under the Fourteenth Amendment).

### 2. Fourteenth Amendment

"An excessive force claim under the Fourteenth Amendment targets arbitrary governmental action, taken without due process." *Estate of Booker*, 745 F.3d at 423 (quoting *Porro*, 624 F.3d at 1326); *see* U.S. Const. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."); *accord Lewis*, 523 U.S. at 847. To succeed on such a claim, Plaintiff must show that Officer Bellow's actions were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. "Three factors guide this determination: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Estate of Gomez*, 745 F.3d at 423 (quoting *Roska*, 328 F.3d at 1243). Whether conduct "shocks the conscience" depends, ultimately, on "the factual circumstances of the case and the level of intent exhibited by the officer[]." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (citing *Lewis*, 523 U.S. at 850).

### i. Proportionality

The court first considers "whether the challenged conduct bears a reasonable justification in the service of a legitimate governmental objective or if instead it might be 'characterized as arbitrary, or conscience-shocking." *Lindsey v. Hyler*, 918 F.3d 1109, 1115-16 (10th Cir. 2019) (quoting *Lewis*, 523 U.S. at 847) (alterations omitted). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 1116 (quoting *Onyx Props., LLC v. Bd. of Cty. Comm'rs*, 838 F.3d 1039, 1048-49 (10th Cir. 2016)). "Challenged

actions must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience-shocking." *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted). "Indeed, not even 'intentionally or recklessly causing injury through the abuse or misuse of government power is enough.'" *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted).

Here, Officer Bellow is said to have "fired five shots into the vehicle" in which Mr. Adkins was hiding, without first identifying himself or giving any commands for Mr. Adkins to surrender. (Compl. ¶¶ 1, 14-15.) Although, at the time of the incident, Plaintiff was reportedly being pursued by CSPD in connection with "numerous felony charges," the Complaint is devoid of any allegations from which to infer that he was armed, or that he posed an immediate safety threat to Officer Bellow or others. (*Id.* at ¶¶ 1, 11.) Further, "numerous" additional CSPD officers were said to be present at the scene. (*Id.* at ¶ 12.) These allegations, taken as true, plausibly suggest that the amount of deadly force used by Officer Bellow was disproportionate to the need presented. *See Estate of Booker*, 745 F.3d at 424-25 (finding the use of a taser to be excessive, and holding that "[a] reasonable jury could conclude that a lesser degree of force would have exacted compliance and that this use of force was disproportionate to the need"); *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (finding excessive force, even though the plaintiff "was accused of committing a violent felony," where the plaintiff did not "actively resist[] seizure," and where "[n]othing suggest[ed]" that the plaintiff "w[as] armed or that other persons besides the [plaintiff] were present"); *Meek v. Crews*, No. 13-cv-01064-MSK-KLM, 2014 WL 1056581, at *3 (D. Colo. Mar. 19, 2014) (finding excessive force, where the complaint alleged that the officer "could have waited for other deputies instead of using force or stopped the altercation by using less force); *c.f. Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th

Cir. 2003) (finding that the use of force was not "disproportionate," and thus, did not violate the Fourteenth Amendment, where officers "launched [a] flexible baton, which was made of rubber, into the rear window of an unoccupied room," given that "there was virtually no likelihood of physical harm resulting from the firing of the baton"); *Latta v. Keryte*, 118 F.3d 693, 702 (10th Cir. 1997) (holding that the use of force was proportionate and reasonable, where the officer used deadly force to stop the plaintiff, only after non-deadly force proved unsuccessful).

### ii.  Motive

The court next considers Officer Bellow's "motive."  *Estate of Booker*, 745 F.3d at 423. Force is deemed to be "excessive" under the Fourteenth Amendment, only if it is "inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience."  *Id.* (quoting *Roska*, 328 F.3d at 1243).  "The level of culpability required for action to shock the conscience largely depends on the context of the action."  *Browder v. Casaus*, 675 F. App'x 845, 847 (10th Cir. 2017).  In the context of emergency situations, such as a high-speed pursuit, where officers are "often forced to make split-second judgments," the allegations must show the officer's "intent to harm."  *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009); *accord Lewis*, 523 U.S. at 853 ("[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed.") (internal quotation marks omitted).  "[T]he intent to harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation."  *Green v. Post*, 574 F.3d 1294, 1301 (10th Cir. 2009) (quoting *Perez v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 432 F.3d 1163, 1167 (10th Cir. 2005)).

However, "when actual deliberation is practical," the officer's actions need only exhibit "conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff" to violate the Fourteenth Amendment.  *Id.* at 1301, 1303.  In evaluating whether an officer acted with deliberate indifference, the court must assess "the circumstances that surround the conduct at issue and the governmental interest at stake."  *Green*, 574 F.3d at 1302 (quoting *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir. 1998)); *see Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking—the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'").

Here, the Complaint's allegations can be fairly read to suggest that Officer Bellow had "opportunity for deliberation" prior to his use of force.  *Radecki*, 146 F.3d at 1231.  At the time of the incident, Officer Bellow was not engaged in any high-speed pursuit of Mr. Adkins. Rather, Officer Bellow is alleged to have "calmly approached" approached a nonmoving vehicle, and then discharged his weapon five times, without warning, and with the "specific intent [] to kill or maim Mr. Adkins."  (Compl. ¶¶ 1, 14-15.)  Although discovery may prove otherwise, at this stage of the proceedings, these allegations suffice to show that Officer Bellow's conduct was deliberately indifferent to such an extent, as to shock the conscience.  *See Sanchez*, 2020 WL 5815913, at * 9 (finding allegations—that "defendants fired dozens of gunshots into an occupied vehicle, where the vehicle was motionless and was not moving toward the officers or any other person, where the officers felt no threat or danger to themselves, and where the officers saw no weapon possessed by the vehicle's occupants"—demonstrated "a degree of outrageousness and harm that could be construed as conscience-shocking depending on the context, to be revealed

through further discovery"); *Pasquale v. Sparks*, No. 12-cv-01225-RPM-KMT, 2013 WL 4027102, at *1 (D. Colo. Aug. 7, 2013) (finding resolution of a Fourteenth Amendment excessive force claim at the summary judgment stage to be improper, and stating that "[t]o evaluate the proportionality of the force used by Defendants in this case, and to understand their motives, the fact-finder must be able to determine whether Pasquale resisted their attempts to control and subdue him, and the extent to which he did so."); *Kirven v. Curry Cnty. Det. Ctr.*, No. 12-0687 JB/WPL, 2013 WL 12330092, at *7 (D.N.M. May 23, 2013) (finding a genuine issue of material fact on the defendant's motive, where the evidence showed that the plaintiff "was not displaying aggression" at the time of the use-of-force incident); *c.f. Roybal-Mack v. N.M. Dep't of Pub. Safety*, 286 F. Supp. 3d 1226, 1237 (D.N.M. 2017) (finding "no evidence of any intent to harm," with respect to officer actions during a high-speed pursuit, where the "undisputed evidence show[ed] that the officers' motives at all times were focused on public safety").

### iii.  Extent of Injury

The final due process factor addresses "the extent of the injury inflicted."  *Estate of Booker*, 745 F.3d at 423.  In the Complaint, Mr. Adkins concedes that he "escaped unharmed" from the April 13, 2018 use-of-force incident.  (Compl. ¶ 16.)  However, Mr. Adkins alleges that he was, nevertheless, "traumatized" by Officer Bellow's conduct.  (*Id.* at ¶ 21.)  Plaintiff alleges, in particular, that he "suffered [a] severe post-traumatic stress injury which caused him to slide further into methamphetamine addiction, ultimately leading to a twenty-four (24) year sentence in the Department of Corrections."  (*Id.*)

Officer Bellow argues that Plaintiff cannot proceed with a Fourteenth Amendment excessive force claim, because he has alleged no physical injury arising from the April 13, 2018 incident.  (Mot. 2.)  In support of that contention, Officer Bellow relies on *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003), in which the Tenth Circuit, in reviewing prior case law, observed that it had "never upheld an excessive force claim without some evidence of physical injury outside of the context of a Fourth Amendment claim."  (*Id.* at 3 (citing *Roska*, 328 F.3d at 1243.))  Nevertheless, the Tenth Circuit has also "consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001) (noting that "[p]hysical injury may be the most obvious injury that flows from the use of excessive force," but "declin[ing] to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions, or scars"); *see Green*, 574 F.3d at 1304 ("Given the Supreme Court's directive that we examine the particular circumstances of the case before deciding whether our consciences are shocked, [] bright-line rules are difficult, if not impossible, to draw.").  Further, as Plaintiff correctly points out, although the Tenth Circuit has never found a viable Fourteenth Amendment excessive force claim in the absence of physical injury, it has also "never precluded the possibility that a particularly egregious excessive force claim may stand notwithstanding the lack of physical injury."  (Resp. 4.).  Indeed, the Tenth Circuit has dismissed Fourteenth Amendment excessive force claims, which do not allege physical injury, only where proportionality and motive are also inadequately alleged.  *See, e.g., Roska*, 328 F.3d at 1243-44 (affirming the dismissal of a Fourteenth Amendment excessive force claim, where the amount of

force used was not "disproportionate," "no serious injury was inflicted," and "nothing in the record indicate[d] that the defendants were motivated by malice or other improper motive"); *Latta*, 118 F.3d at 702 (finding the extent of the plaintiff's injuries to be "minimal," given that "the pursuit did not cause him any physical injury," but also concluding that "the force was not grossly disproportionate to the need presented," and finding no "improper motive or malice"); *Bella v. Chamberlain*, 24 F.3d 1251, 1257-59 (10th Cir. 1994) (acknowledging that other circuits have found viable Fourteenth Amendment excessive force claims "without proof of any physical injury in rare circumstances where one of the other due process factors involves particularly egregious governmental conduct," but declining to "decide the propriety of such an approach in the instant case," because the facts, as alleged, did not show either "grossly disproportionate force," or "improper motives or malice"); *see also Porro*, 624 F.3d at 1327 n.1 (observing that "[h]ow much one due process 'factor' may 'balance' against another is the subject of little discussion in our case law," but finding no "need [to] delve further into any of this today because Mr. Porro fails on *each* of the due process factors") (emphasis in original); *Estate of Booker*, 745 F.3d at 426-27 ("Defendants have not cited, and we have not found, any case in this circuit that disposed of a due process excessive force claim solely on the 'motive' factor when disproportionate force and serious injury were present.").

In this case, considering all relevant factors together, the court finds that the absence of a physical injury does not necessarily foreclose Plaintiff's excessive force claim. Although Plaintiff alleges no explicit physical injury from Officer Bellow's use of force, his allegations concerning the other two due process factors are "sufficiently egregious" to state a claim under the Fourteenth Amendment. *See Craig v. Torrance Cnty.*, No. 99-1308 MV/DJS, 2000 WL

36739644, at *4 (D.N.M. Aug. 23, 2000) ("Although the Plaintiff in this case suffered no physical injury, the other two factors to be considered in an excessive force claim . . . are sufficiently egregious to cross the line into a constitutional violation."); *Checki v. Webb*, 785 F.2d 534, 535 (5th Cir. 1986) ("A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a § 1983 claim against him.").  Further, Mr. Adkins does allege a "severe post-traumatic stress injury" arising from Officer Bellow's actions.  (Compl. ¶ 21.)  Given that the evaluation of an excessive force claim is an inherently fact-specific inquiry, the court agrees that the "degree and exact cause" of Plaintiff's claimed injury "would be more appropriate to deal with" at a later stage of the proceedings.  (Resp. 6); *see Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008) ("Viewed in total, Briggs has described conduct that could be 'construed as conscience-shocking, depending on the context' after the facts are fully developed."); *Sanchez*, 2020 WL 5815913, at *8 ("[O]n a motion to dismiss, the relevant question is whether the complaint alleges facts that 'could be conscience shocking, depending, of course, on further context provided by discovery."); *A.A. ex rel. Archuletta v. Martinez*, No. 12-cv-00732-WYD-KMT, 2012 WL 5869158, at *12 (D. Colo. Nov. 19, 2012) (holding a plaintiff's allegations to adequately allege behavior that "shocks the conscience," and noting that "[t]hese issues will need to be fleshed out in the evidence, and are not appropriate for resolution in connection with [a] motion to dismiss"); *see also City of Escondido, Cal. v. Emmons*, --- U.S. ----, 139 S. Ct. 500, 503 (2019) (observing that "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case").

Accordingly, the Complaint's allegations, taken as true and construed in Plaintiff's favor, show that Officer Bellow used an amount of force against Plaintiff that was disproportionate and unreasonable, and that Officer Bellow acted with a level of deliberate indifference that "shocks the conscience." Therefore, notwithstanding the lack of physical injury, at this stage of the proceedings, Plaintiff has plausibly alleged a Fourteenth Amendment excessive force claim against Officer Bellow.

### B. Whether the Right Was Clearly Established

Because Plaintiff has plausibly alleged a violation of his constitutional rights by Officer Bellow, the court must next determine whether that right was "clearly established" at the time of the alleged misconduct. *Brown*, 662 F.3d at 1164. A right is "clearly established," only if "a Supreme Court or [] Tenth Circuit decision on point, or the clearly established weight of authority from other circuits [have] found the law to be as the plaintiff maintains." *Id.* (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Stearns*, 615 F.3d at 1282). In other words, "a reasonable officer must have known that he could not behave as Mr. [Adkins] alleges that Officer [Bellow] did." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

In deciding whether the law is "clearly established," the Tenth Circuit has adopted a "sliding scale" approach, under which "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015)

(quoting *Shroff v. Spellman*, 604 F.3d 1179, 1189-90 (10th Cir. 2010)); *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008) (holding that liability may be found where "a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct" at issue); *see also Casey*, 509 F.3d at 1284-85 (explaining the rationale behind the "sliding scale" approach, and noting that, because excessive force analysis is an inherently fact-specific inquiry, which requires "careful attention to the facts and circumstances of each particular case," "there will almost never be a previously published opinion involving exactly the same circumstances").

In the present Motion, Officer Bellow argues that he is entitled to qualified immunity, because "no Tenth Circuit decision clearly establishes that a use of force which does not cause any physical injury violates the Fourteenth Amendment."  (Mot. 3.)  Mr. Adkins, on the other hand, contends that Officer Bellow's argument "defies reason and common sense."  (Resp. 3.)  Plaintiff is adamant that Officer Bellow "was clearly aware" at the time of the use-of-force incident "that shooting someone who did not pose a risk was a violation of the Constitution." (*Id.*)  Mr. Adkins likewise contends that police officers, such as Officer Bellow, should not be given "unfettered license" to use constitutionally excessive force, "[s]imply because [the § 1983 plaintiff] was not injured in the onslaught of gunfire."  (*Id.* at 6.)

The Tenth Circuit "has repeatedly held that force is unconstitutional when used against individuals who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance."  *Sanchez*, 2020 WL 5815913, at *9 (citing *McCoy v. Meyers*, 887 F.3d 1034, 1052 n.21 (10th Cir. 2018)); *see Morris v. Noe*, 672 F.3d 1185, 1190, 1198 (10th Cir. 2012) (holding that police officers were not entitled to qualified immunity, where the officers threw the

plaintiff to the ground and fell on top of him, despite the fact that the plaintiff had his hands raised, was not attempting to flee, posed no threat to the officers, and was suspected of only misdemeanor assault); *see also Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016) ("[I]t is, and was at the time of Davis' arrest, clearly established law that the use of disproportionate force to arrest an individual who has not committed a serious crime and who poses no threat to herself or others constitutes excessive force.").

Here, at the time of the use-of-force incident, Mr. Adkins was apparently being pursued in connection with attempted robbery. (Compl. ¶ 11.) Mr. Adkins was said to be sitting inside of an unlocked pickup truck, when Officer Bellow opened fire at the vehicle, discharging his weapon five times, without any warning. (*Id.* at ¶¶ 1, 12-15.) The Complaint is devoid of any allegations from which to infer that the vehicle was turned on, or that it was being used by Mr. Adkins as a weapon. *See Davis*, 825 F.3d at 1136-37 (holding that clearly established law prohibited an officer's use of force, where the plaintiff's vehicle was surrounded on all sides by police vehicles, and therefore, the plaintiff "could not have driven away"); *c.f. Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007) (holding that officers were justified in using pepper spray on a driver during a traffic stop for speeding, in part, because the driver had the keys and control of the vehicle and refused to cooperate). Nor do the allegations suggest that Plaintiff was armed, that he had access to a weapon, or that he was displaying any object that might be construed by Officer Bellow to be a weapon. *See Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (holding that an officer violated clearly established law when he used deadly force, in part, because it was not clear from the evidence that the plaintiff "manifested an intent to harm [the officer] or anyone else at the scene");

*Terebesi v. Torreso*, 764 F.3d 217, 239 (2d Cir. 2014) (denying qualified immunity to officers who used stun grenades, where there was no suggestion that the plaintiff was ready to engage in violence or had immediate access to weapons); *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007) (holding that an officer's use of force was not justified, where the plaintiff carried a weapon in his vehicle, but was too far from his vehicle to access the weapon at the time of the incident).

Although discovery may prove otherwise, at this stage of the proceedings, the Complaint's allegations, taken as true, plausibly show that Officer Bellow violated clearly established law, by using deadly force without facing imminent danger, against Mr. Adkins, who posed no immediately apparent threat to Officer Bellow, or to others.  *See Davis*, 825 F.3d at 1136-37; *Sanchez*, 2020 WL 5815913, at *9 (finding a viable Fourteenth Amendment due process claim, where police officers, while pursuing the plaintiffs in connection with a car theft, "shot dozens of times into [their] stopped vehicle," even though the plaintiffs "were not using their car as a weapon or displaying any weapons," and where the plaintiffs "were not warned before the officers fired at the car").

Accordingly, at the Rule 12(b)(6) stage of this litigation, Officer Bellow is not entitled to qualified immunity.  *See Weigel v. Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008) ("[W]e do not think it requires a court decision with identical facts to clearly establish that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself."); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm

resulting from failing to apprehend him does not justify the use of deadly force to do so.").  For

that reason, Officer Bellow's motion to dismiss this claim will be denied.

## II.  *Colorado Springs*

Mr. Adkins also asserts a § 1983 claim against Colorado Springs.  (Compl. ¶¶ 43-52.)

Plaintiff alleges, specifically, that the City has "engaged in a persistent practice of law

enforcement misconduct," by "maintain[ing] policies, procedures, customs, and/or practices that

tacitly or explicitly authorize[] excessive force," and that is has "failed to properly train,

supervise, and discipline officers who have engaged in such misconduct."  (*Id.* at ¶¶ 23, 45.)

Plaintiff further alleges that the City has "failed to implement any policies to remedy the problem

of excessive force by its officers," as evidence by the high rate of CSPD officer-involved

shootings, as well as the amount of money that the City has paid to settle excessive force claims

in recent years.  (*Id.* at ¶¶ 24-25.)

"A municipality may not be held liable under 42 U.S.C. § 1983 simply because it

employs a person who violated a plaintiff's federally protected rights."  *Jenkins v. Woods*, 81

F.3d 988, 993 (10th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Rather, "it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under § 1983."  *Schneider v. City of

Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at

694).

To establish municipal liability under § 1983, a plaintiff "must allege facts showing: (1)

an official policy or custom, (2) causation, and (3) deliberate indifference."  *Crowson v. Wash.*

*Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).  A "policy or custom" can take the form of "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."  *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotation marks omitted).  Causation is established, if the challenged policy or practice is shown to be "closely related to the violation of the plaintiff's federally protected right."  *Schneider*, 717 F.3d at 770.  "This requirement is satisfied if the plaintiff shows that the [entity] was the 'moving force' behind the injury alleged."  *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  Finally, to establish municipal liability, the plaintiff must show that the policy or custom "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Id.* at 769.  This "deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Quintana*, 973 F.3d at 1034 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

Here, Mr. Adkins has not adequately identified a formal regulation or policy statement adopted by Colorado Springs, which resulted in the alleged violations of his constitutional rights. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (noting in *dicta* that allegations—"that Denver has a custom, policy, or practice of tolerating and ratifying the use of excessive force"—failed to show "that Denver has a formal regulation or policy permitting the use of excessive force"); *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (holding allegations—"that the City had a policy or custom of prohibiting lawful photography at the airport, retaliating against those who filmed at the airport, and failing to train its employees properly"—to be too conclusory to state a claim under § 1983).  Nor does the Complaint allege a decision made by an individual who held final policymaking authority, or the ratification of a subordinate's decisions by such an individual.  Rather, the theories of municipal liability advanced by Mr. Adkins are that: (1) Colorado Springs has a "persistent practice" of allowing CSPD officers to use excessive force; and that (2) Colorado Springs has "fail[ed] to train and to appropriately supervise" CSPD officers regarding the use of excessive force.  (Compl. ¶¶ 23, 44-45, 48.)

### A. *"Widespread Practice"*

The Complaint alleges that Colorado Springs "maintained law enforcement related policies, procedures, customs, and/or practices," which "tacitly or explicitly authorized excessive force, and failures to intervene, by [CSPD] officers," including "the failure to train on . . . respecting the Fourteenth Amendment rights of citizens to be free from excessive force."  (*Id.* at ¶ 45.)  Mr. Adkins alleges that Officer Bellow acted pursuant to these "policies, procedures,

customs, and/or practices," when Officer Bellow used constitutionally "excessive" force against him.  (*Id.* at ¶¶ 36, 45-46.)

These allegations, even taken as true, fail to plausibly show "an informal custom amounting to a widespread practice" of permitting excessive force by CSPD officers.  *Crowson*, 983 F.3d at 1184.  Specifically, the Complaint is devoid of *any* facts concerning similar instances of excessive force.  *See Waller*, 932 F.3d at 1290 ("Mr. Waller's allegations—describing only one similar incident of excessive force prior to his own injuries—fall far short of plausibly alleging a 'widespread practice' of excessive force[.]"); *Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 964 (10th Cir. 2018) (holding that a plaintiff failed to adequately allege a custom or policy, where the complaint "never set[] out the text of any [municipal] policy," and did not "describe any prior incidents that would have established a pattern or practice on the part of the city that could cause [the court] to view subsequent inaction as evidence of a policy of deliberate indifference"); *Bledsoe v. Bd. of Cnty. Comm'rs of Cnty. of Jefferson, Kan.*, --- F. Supp. 3d ----, 2020 WL 6781389, at * 66 (D. Kan. 2020) ("[P]laintiff's assertion that a widespread practice existed, while providing only factual allegations about his own criminal prosecution does not provide enough facts to allege a plausible 'informal custom amounting to a widespread practice' of fabricating inculpatory evidence or withholding exculpatory evidence.").

In the Complaint, Plaintiff references various statistics concerning CSPD use-of-force incidents.  Mr. Adkins reports that the City of Colorado Springs "paid $412,500 to settle excessive force claims between 2010-2015," and he alleges that "almost none of the officers involved were disciplined."  (Compl. ¶ 24.)  Plaintiff further alleges that "[t]he number of officer-involved shootings has gone up by 90% in the last 10 years and the number of citizens

killed has doubled." (*Id.* at ¶ 25.)  Mr. Adkins states that the rate of CSPD officer-involved

shootings is "4.85 per 100,000 citizens," which he alleges to be "significantly higher than the

national average." (*Id.*)  However, to the extent that Plaintiff relies on these statistics to show a

"widespread practice" of excessive force, he fails to allege adequate facts from which to infer

that the purportedly increased rate of CSPD officer-involved shootings is directly attributable to

a City policy, as opposed to other factors, such as demographic changes, or an increase in violent

crime.[2]  *See Waller*, 932 F.3d at 1284 (holding that there must be "a direct causal link between

the policy or custom and the injury alleged").

For those reasons, then, Mr. Adkins has failed to demonstrate a "widespread practice" of

excessive force.  As such, Plaintiff cannot proceed on this theory of municipal liability.

### B.  Failure to Train

"In limited circumstances, a local government's decision not to train certain employees

about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

However, a county's § 1983 liability "is at its most tenuous where a claim turns on a failure to

train." *Id.* (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-823 (1985)).  To recover under a

---

[2]  The Complaint also alleges that a "committee," which "was formed to address and review CSPD's use of force policies," recently "made several recommendations regarding changes for the way unlawful use of force complaints are reviewed and training methods for CSPD officers' use of force." (Compl. ¶ 26.)  Plaintiff claims that "these recommendations were either ignored or quickly abandoned." (*Id.*)  However, Plaintiff does not identity who, specifically, "ignored or quickly abandoned" the recommendations, or provide any further detail regarding this assertion. As such, this allegation is too conclusory to support any claim for relief.  *See Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (holding a § 1983 plaintiff's allegation—that it was a governmental entity's custom or practice "to reduce overall expenses and maximize bonuses with each fiscal period"—to be "wholly conclusory," and thus, "would not cause his [municipal liability] claim" to withstand a motion to dismiss).

"failure to train" theory, Mr. Adkins must show that Colorado Springs was "deliberately indifferent" to the need for more or better training, such that the "failure to train reflects a 'deliberate' or 'conscious' choice."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  In other words, Plaintiff must show that the City had "actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation, and it consciously or deliberately cho[se] to disregard the risk of harm."  *Barney*, 143 F.3d at 1307 (citation omitted).  "To satisfy the stringent deliberate indifference standard, 'a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'"  *Waller*, 932 F.3d at 1285 (quoting *Connick*, 563 U.S. at 62) (alterations omitted).  Only in a "narrow range of circumstances" will deliberate indifference be found "without proof of a pre-existing pattern of violations."  *Id.* at 1287-88 (quoting *Connick*, 563 U.S. at 63-64).

Here, Plaintiff alleges that Colorado Springs has "consistently failed to properly train" its police officers to "respect[] the Fourteenth Amendment rights of citizens to be free from excessive force."  (*Id.* at ¶¶ 23, 25, 45.)  Mr. Adkins claims that the City's "inadequate training" stems from "a conscious or deliberate choice to follow a course of action from among various alternatives available."  (*Id.* at ¶ 49.)  Plaintiff further alleges that the City "failed to implement any policies to remedy the problem of excessive force by its officers," and that it "either ignored or quickly abandoned" certain "committee" recommendations concerning "the way unlawful use of force complaints are reviewed and training methods for CSPD officers' use of force."  (*Id.* at ¶¶ 24, 26.)  According to Plaintiff, "[i]f any training was given to [Officer] Bellow concerning the rights of citizens to be free from excessive force," then Colorado Springs "should have

known that such training was reckless or grossly negligent and that misconduct in this area was almost inevitable." (*Id.* at ¶ 50.)

These allegations, even taken as true, fail to state a failure-to-train theory of § 1983 liability against Colorado Springs. First, Plaintiff has made no specific allegations concerning the City's police training program, inadequate or otherwise. *See Zartner v. City & Cnty. of Denver, Colo.*, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2017) (dismissing a *Monell* claim for failure to train, in part, on that basis); *see also City of Canton*, 489 U.S. at 390-91 ("In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Nor has Plaintiff set forth any facts regarding how Officer Bellow was trained, who he was trained by, or why his training was deficient. *See Sanchez*, 2020 WL 5815913, at *11 (dismissing a *Monell* claim for failure to train and/or supervise on that basis); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing a municipal liability claim, where the plaintiff "generally allege[d]" that the individual defendants were not properly trained, but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"); *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (dismissing a municipal liability claim, where the complaint did not allege specific facts concerning the officers' training, and did not identify individuals that allegedly failed to supervise or train). Further, the Complaint does not allege any "pre-existing

pattern of violations."  *Waller*, 932 F.3d at 1285.  Although "a single incident of excessive force

can establish the existence of an inadequate training program," there still must be sufficient

factual allegations regarding "the program's inadequacy" to establish municipal liability.  *Carr v.

Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).  Here, Plaintiff does not identify any specific

alleged deficiencies in Officer Bellow's training, or in the training of other CSPD officers.[3]  As

such, Plaintiff has not alleged a viable municipal liability claim for failure to train.  *See Sanchez*,

2020 WL 5815913, at *11 (dismissing a municipal liability claim, where the plaintiffs'

allegations "focus[ed] solely on the events of one night and rel[ied] on an assumption that the

officers' behavior must have been the result of the [city's] training decisions"); *Zartner*, 242 F.

Supp. 3d at 1173-74 ("[B]ecause plaintiff's amended complaint makes no allegations related to

Officer Miller's training or the training of his counterparts, plaintiff fails to state a claim against

the City on a failure to train theory.").

### C.  Failure to Supervise

In the Complaint, Mr. Adkins also asserts a failure-to-supervise theory of liability against

Colorado Springs.  (Compl. ¶¶ 48-49.)  Plaintiff alleges, specifically, that the City did not

"appropriately supervise [CSPD] officers," such as Officer Bellow, who "participate[d] in using

deadly force in trying to apprehend suspects[.]"  (*Id.* at ¶¶ 22, 47-48.)  Mr. Adkins also

complains that CSPD did not "discipline[]" or "reprimand[]" Officer Bellow, in connection with

the April 13, 2018 use-of-force incident, until after he was indicted by a grand jury.  (*Id.* at ¶ 19.)

---

[3] To the extent that Plaintiff relies on the statistics referenced in his Complaint to show that the City's excessive force training is deficient, he fails to link those statistics to any specific training deficiencies.  (Compl. ¶¶ 24-26.); *see Waller*, 932 F.3d at 1284 (noting that the "causation element is applied with especial rigor . . . when the municipal liability claim is based upon inadequate training").

However, the Complaint alleges no facts from which to discern any *specific* supervisory deficiencies by Colorado Springs, or how the City's purportedly inadequate supervision of Officer Bellow caused Plaintiff's injury, or how such injury could have been avoided with different or improved supervision.  Without such allegations, Plaintiff cannot proceed on this theory of §1983 liability, either.  *See Waller*, 932 F.3d at 1289 (finding that a plaintiff failed to allege a failure-to-supervise theory of municipal liability, where the complaint merely "allege[d] in conclusory fashion that Denver knew or should have known that its employees were inadequately supervised"); *Bark*, 2011 WL 1884691, at *3 (dismissing conclusory allegations that the city failed to properly supervise police officers).

On this record, then, Plaintiff has failed to plausibly allege any "official policy or custom," for purposes of establishing municipal liability under § 1983.  Therefore, his § 1983 claim against the City of Colorado Springs will be dismissed.

Accordingly, it is

**ORDERED** that the "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 11) is **GRANTED, in part,** and **DENIED, in part**.  Specifically, Plaintiff's claim against Defendant City of Colorado Springs is **DISMISSED without prejudice** for failure to state a claim.  The Motion is **DENIED** in all other respects.  Defendant City of Colorado Springs is hereby

**DISMISSED from this lawsuit**.  The case **PROCEEDS** against Defendant Bellow alone, solely

on Plaintiff's Fourteenth Amendment excessive force claim.

Dated this 3rd day of March, 2021.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge